## Craig's Estate,

*Wills—Construction—Heirs-at-law to be ascertained as of date of death of last surviving child.*

Testator created a trust for the benefit of his wife and four children, and directed that it should continue until the death of his last surviving child, when it should cease, and all his estate should "then descend and go to my heirs at law according to the intestate laws of the State of Pennsylvania then in force:" *Held*, that the heirs at law were to be ascertained as of the date of the death of the last surviving child.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1882, No. 391.

The auditing judge, Lamorelle, P. J., said in his adjudication:

"The trust created in and by the will of Hugh Craig (who died in 1878, and whose will was executed in 1873), for the benefit of his wife and four children, terminated by the death of the last of the three children who survived him, Alice D. Hatfield (*nee* Craig), which occurred May 3, 1922.

"One of the four children named in the will, Wilson D. Craig, died in his father's lifetime, intestate and without issue. Another, Sallie C. Wright, died in 1882, survived by three children, all now alive and of age: Catharine C. Wright, Wilson D. C. Wright and Josephine C. Wright.

Craig's Estate.

"Hugh Craig, Jr., died in 1913, testate, leaving no legitimate issue, and giving his estate unto his sister, said Alice D. Hatfield.

"The widow of Hugh Craig, the elder, Catharine Craig, who was to have the income for life, died in 1894.

"The present accounting is had because the trust has ended.

"On the one hand, the *corpus* is claimed by the three children of Catharine C. Wright. On the other, two-thirds thereof is claimed by the administrator of the estate of Alice D. Hatfield, who concede that the Wright children are entitled to the other one-third.

"The will provides: '8. These trusts are to continue until the death of my last surviving child, when the same shall cease and determine, and all my said property and estate shall *then* descend and go to my heirs at law *according* to the intestate laws of the State of Pennsylvania *then* in force.'

"Are those who take to be ascertained as of the date of the death of Hugh Craig, the elder, or as of that of the survivor of his children? This is the one question for decision, and the auditing judge is of opinion, and he holds, that testator's purpose is clear and is so expressed that the later event governs.

"Were it not that the property is to descend to heirs at law according to the law *then* in force, the auditing judge would be inclined to rule differently; but this second *then* in the one sentence—evidently an adverb of time—is controlling. Testator must have had in mind others than the first objects of his bounty: his wife and four children. Else why designate law in force when they should all be deceased as the test, rather than law as it should exist at the time of the making of his will, as it should exist at the time of his death, or, as is generally the case, simply refer to distribution under 'the intestate law.'

"If the testator intended those who would inherit *at the time* of his own death as the persons who should take, they might have been deprived of their vested right if the intestate laws had undergone a marked change during the period of their respective lives.

"The accuracy of expression in the will would seem to show that nothing was intended to be left to chance. The first 'then' in the sentence may be, and probably is, used as a conjunction, and if it stood alone, the general rule would apply; as to which, see Stewart's Estate, 147 Pa. 388; Buzby's Appeal, 61 Pa. 111; Fuller's Estate, 225 Pa. 626; Fitzpatrick's Estate, 233 Pa. 33; McFillin's Estate, 235 Pa. 175; Tatham's Estate, 250 Pa. 269; Bache's Estate, 246 Pa. 276; but the second 'then' eliminates from consideration others than such heirs at law as shall at that time take, and in effect reads into the will not only those who take, but also defines the *quantum* of their estate.

"A question similar to the one now before the auditing judge has been so fully and so elaborately treated, both by this court in an opinion by Judge Gest and, on appeal, by Mr. Justice Schaffer in Leech's Estate, 1 D. & C. 352, 274 Pa. 369, that there would appear to be no good reason for further discussion, in that the wills are in so many respects alike, and in that case the decision favors the construction adopted by the auditing judge in this."

*Chester N. Farr, Jr., Harold H. Yocum, William A. Glasgow, Jr.,* and *J. Rodman Paul,* for Henry R. Hatfield, exceptant.

*John Franklin Shields* and *M. Hampton Todd,* contra.

THOMPSON, J., March 2, 1923.—Testator by his will provided as follows: "These trusts are to continue until the death of my last surviving child, when the same shall cease and determine, and all my property and estate shall then

2 D. & C.

descend and go to my heirs at law according to the intestate laws of the State of Pennsylvania then in force."

The last child of the testator having died, the question was presented as to whether the heirs of the testator were to be ascertained as of the date of his death or as of the date of the death of the last surviving child. Testator died in 1878, and his last surviving child died May 3, 1922.

The auditing judge held that the heirs were to be ascertained as of the date of death of the last surviving child, relying upon the reasoning in Leech's Estate, 274 Pa. 369, which has been reaffirmed by the Supreme Court of Pennsylvania in an opinion handed down Feb. 26, 1923, not yet reported, in Murphey's Estate, a case arising in this court and reported in 1 D. & C. 380.

As we are of opinion that the auditing judge correctly construed the above quoted section of the will of testator, further comment is unnecessary, and the exceptions are dismissed and the adjudication is confirmed absolutely.